## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## FORT MYERS DIVISION

MARTIN JOHNSON,

                Plaintiff,

vs.                                              Case No: 2:04-cv-343-FtM-29SPC

JO ANNE BARNHART,
Commissioner of Social Security,

                Defendant.

_____


## REPORT AND RECOMMENDATION[1]

      This matter comes before the Court on the Plaintiff Martin Johnson's Complaint Seeking Review of the Final Decision of the Commissioner of Social Security (Commissioner) denying the Plaintiff's Claim for Disability Insurance (Doc. #1) filed on June 24, 2004.  On January 3, 2005, the Plaintiff filed her Memorandum in Opposition to the Commissioner's Decision (Doc. #11).  The Commissioner filed a response (Doc. #12) on February 2, 2005.   Thus, the motion is now ripe for review.

      The Undersigned has reviewed the record, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the exhibits filed and administrative record, and the pleadings and memoranda submitted by the parties in this case.

---

[1]   This Report and Recommendation addresses only the issues brought up for review by the District Court pursuant to 28 U.S.C. § 405(g).

## BACKGROUND

### *Procedural History*

On January 30, 2001, the Plaintiff filed an application for Disability Insurance Benefits (SSDI) alleging a disability onset date of December 12, 2000.  The application was denied initially on April 25, 2001 (Tr. 45) and upon reconsideration on August 9, 2001(Tr. 53).  The Plaintiff filed a Request for Hearing on August 21, 2001.  (Tr. 55).  A hearing was held on May 8, 2003 before the Honorable Ruben Rivera, Jr., Administrative Law Judge (ALJ). ( Tr. 311-357).  The ALJ issued an unfavorable decision on June 10, 2003.  (Tr. 16-26).  The Plaintiff filed a Request for Review to the Appeals Council on July 3, 2003.  (Tr. 13).  On April 30, 2004, the Appeals Council denied the request for review making the ALJ's decision the final decision of the Commissioner.  (Tr. 4).  Pursuant to 42 U.S.C.§ 405(g), the Plaintiff now seeks judicial review of the Commissioner's final decision.

### *Plaintiff's History*

Plaintiff, Martin Johnson, was born on September 23, 1956, and was 47 years old at the time of his hearing before ALJ Ruben Rivera, Jr.   Plaintiff has a ninth grade education, and has prior work experience as a manager/oil changer, shop and repair manager, night auditor, manager of pre-cast showroom, operations manager, shipping receiving manager/production manager, security guard and parts manager.  He became disabled on December 12, 2000 due to right leg below the knee  amputation, back and neck pain, depression, and chronic anxiety.

From February 2, 1988 through April 20, 2001, Plaintiff was treated by Dr. Douglas Boynton. (Tr. 120-148). On September 27, 2000, Plaintiff complained of pain in his left knee which was mainly along the central joint line and was worse with weight bearing. (Tr. 123).  He

2

was assessed with patellar tendinitis. (Tr. 123). On April 6, 2001, Dr. Boynton stated that

Plaintiff suffers from a mental impairment that significantly interferes with his daily functioning.

(Tr. 120). Dr. Boynton stated that Plaintiff started having anxiety-related disorder attacks or

episodes greater than thirteen years ago (Tr. 121). Dr. Boynton reported that Plaintiff suffers

from depression and chronic anxiety. (Tr. 121).

From April 8, 1994 through January 21, 2001, Plaintiff was treated by Dr. Leslie J.

Schultzel. (Tr.175-193). On October 3,2000, Plaintiff complained of back pain radiating into

both legs. (Tr. 177). Dr. Schultzel noted that Plaintiff was under the care of a chiropractor with

no improvement. (Tr. 177).  Plaintiff's past medical history included arthroscopy, right knee,

status post below knee amputation. (Tr. 177). The physical examination revealed tenderness in

the low back and tenderness along the left knee medial joint line but an essentially normal

neurological exam. (Tr. 177).  Impression was possible disc herniation and possible torn menisci.

(Tr. 177). The x-ray of the lumbosacral spine performed on October 3, 2000 revealed mild

osteopenia, and sclerosis L-5 S-1 facet joints. (Tr.187). Impression was minor degenerative

changes were noted at L-5 S-1 facet joints, LS spine. (Tr. 187). The x-ray of the right knee

revealed degenerative changes at lateral joint line and patellofemoral joint.  (Tr. 188). The x-ray

also revealed below knee amputation. (Tr. 188). The MRI of the left knee performed on October

4, 2000 showed the impressions of tiny joint effusion without evidence of internal derangement.

(Tr. 186).  An MRI of the lumbar spine showed no evidence of focal disc herniation.  (Tr. 186).

On October 10, 2000, the Plaintiff was significantly improved.  The MRI's showed no evidence

of internal derangement of his knee and no evidence of disc herniation. (Tr. 176).   On November

14, 2000, Plaintiff complained of having ache in his neck radiating to his upper extremities and

3

aching in his dorsal spine. (Tr. 176).  Dr. Schultzel noted that Plaintiff had diffuse arthralgias.

(Tr. 176). The x-ray of the thoracic spine performed on November 14,2000 showed the

impression of calcified lymph nodes at the hilar regions bilaterally, AP window and right

peritracheal region. (Tr. 183).  However, there was no evidence of acute osseous abnormality or

destructive process.  (Tr. 183).   The x-ray of the cervical spine performed on November 14,2000

showed the impressions of early degenerative disc disease at C-5, C-6.  (Tr. 184). On December

11, 2000, Plaintiff complained of intractable pain in his back.  (Tr. 175). Plaintiff stated that his

pain was in the area of L4 radiating into both flanks.  (Tr. 175). Additionally, Plaintiff stated that

he has severe aching about the left elbow.  (Tr. 175). The pain was localized over the later

epicondyle but was also over the triceps insertion. (Tr. 175).  Plaintiffs major complaint was pain

over the spine. (Tr. 175).  However,  it was noted that an MRI revealed no evidence of disc

herniation.  (Tr. 175).

From October 17, 2000 through October 20, 2000, Plaintiff was treated by Sue Avren,

P.T.A. (Tr. 202-203). On October 17, 2000, Plaintiff complained of continued pain in his lower

back, coming on rather suddenly, and an inability to straighten up. (Tr. 203). Plaintiff complained

that sitting for any length of time would increase his pain. (Tr. 203). C. Bruce Meert, P.T, noted

that Plaintiff had tenderness bilaterally in the lower thoracic and the entire lumbar musculature.

(Tr. 203). The pain was down into both legs. (Tr. 203).  In addition, flexion in standing does

increase symptoms in the back and the leg. (Tr. 203).  Meert  also noted that extension in

standing was very difficult. (Tr. 203). On October 18, 2000, Plaintiff complained of having a

considerable amount of pain into the right mid-thoracic around the ribs as well as the lower back

through the belt line and the neck. (Tr. 203). Scott Frost, B.S, PTA, stated that Plaintiff received

4

trigger point release to the right superior and medial fibers quadratus lumbonun with referred pain up to the right shoulder blade. (Tr. 203). The assessment was that there was significant limitations in cervical axial extension, thoracic and lumbar extension. (Tr. 203). There also appeared to be significant postural deformations. (Tr. 203). It was noted that the Plaintiff did tolerate and respond well to the extension exercises.  (Tr. 203).  On October 20, 2000, Plaintiff reported constant aching and soreness throughout the lower lumbar region, however, he was more aware of his body mechanics and posture. (Tr. 202). The Plaintiff demonstrated moderate tightness throughout the lumbar and thoracic area. (Tr. 202). Considerable tenderness was noted in the back region. (Tr. 202). The assessment was that the Plaintiff had some difficulty with transfers and gait immediately after the treatment, however reported some relief after extension exercises and walking around. (Tr. 202).

From December 9, 2000 through February 13, 2002, and from May 13, 2002, through March 24, 2003, Plaintiff was treated by Dr. F. Desmond Hussey. (Tr.201-220, 293-310). On December 9, 2000, Plaintiff presented with excruciating pain for the past four months into the left buttock and leg. (Tr.220,301). However, the MRI does not show prominent neural compromise. (Tr. 220).  Plaintiff had Left L4-5 and L5-S1 Interarticular Facet Block.  (Tr. 220,301). The postoperative diagnosis was mechanical lumbar pain with lumbosacral facet syndrome. (Tr. 220, 301). On January 11, 2001, Plaintiff presented with back pain going on for three or four months-unrelenting. (Tr. 219, 302).  He had dramatic relief and pain on the left side with the facet block. (Tr. 219).  Plaintiff also complained of prominent pain on the right side into the hip. (Tr. 219, 302). The MRI, however, does not show neural compromise. (Tr. 219). Plaintiff had right L4-5 and L5-S1 Interarticular Facet Block.  (Tr. 219, 302).  The postoperative

5

diagnosis was mechanical lumbar pain with lumbosacral facet syndrome. (Tr. 219, 302).

In a letter dated January 19, 2001, Dr. Hussey stated that Plaintiff has a history of anxiety, depression, in a motor vehicle accident that required a right below knee amputation (BKA), as well as multiple knee surgeries bilaterally. (Tr. 21 7).   Dr. Hussey stated that Plaintiff tried anti-inflammatories and physical therapy but the Plaintiff s pain persisted. (Tr. 217).   Dr. Hussey stated that Plaintiff underwent a right-sided facet block initially on December 9, 2000 which gave him a dramatic reduction in symptoms and then he had one on the left side on January 11, 2001 which gave him about a 75% reduction in symptoms. (Tr. 217).   Dr. Hussey noted  the Plaintiff claimed his pain was coming back. (Tr. 217).   It is particularly excruciating on the left. (Tr. 217). The pain was worse if he sits for too long, stands in one position for too long, and is up on his feet for too long. (Tr. 217). Occasionally, Plaintiff feels like he has some weakness in his left leg. (Tr. 217). He reported that the pain can be stabbing, at other times it can be an ache or pressure. (Tr. 217). Dr. Hussey noted that the pain has made the Plaintiff a little bit depressed and frustrated. (Tr. 217). The physical exam revealed that Plaintiff has a prosthesis of the right leg below the knee. (Tr. 21 8). Dr. Hussey noted that Plaintiff has exquisite tenderness paravertebrally in the lumbar region over the facet joints and some exacerbation of pain with extension and lateral rotation. (Tr. 218).   Impression was chronic mechanical lumbar pain with lumbar facet syndrome. (Tr. 218).

On January 25, 2001, Plaintiff presented with chronic pain all the time in his back. (Tr. 216).   He had fairly significant reduction of pain on the left side with inter-articular facet blocks. (Tr. 216).   Plaintiff had right L4-5 and L5-S1 interarticular facet block.  (Tr. 216, 300). The postoperative diagnosis was mechanical lumbar pain with lumbosacral facet syndrome. (Tr. 216,

6

300). On April 30, 2001, Plaintiff identified that he had a pain drop from about an 8 to a 4, a 50% overall at maximum, but he complained of having a few episodes of severe spasms where he gets terrible pain in the legs and back. (Tr. 214). The physical examination revealed tenderness over the lower lumbar facet joints, particularly the right side. (Tr. 214).  Plaintiff was wearing his prosthesis for his right leg. (Tr. 214). On May 22, 2001, Plaintiff was presented with chronic lumbar pain for nine months radiating to the leg a little bit on the right.  (Tr. 213). He had a greater than 50% reduction of symptoms with facet denervation. (Tr. 213).  Plaintiff had right L3, L4, L5, and S1 Medial Dorsal Ramus Facet Denervation/Rhizotomy.  (Tr. 213, 299). Dr. Hussey noted that Plaintiff has a below knee amputation (BKA) on the right. (Tr. 213, 299). The postoperative diagnosis was mechanical lumbar pain with lumbosacral facet syndrome. (Tr. 213, 299). On June 13, 2001, Plaintiff stated that he still has the soreness on the right side but the excruciating pain on the right side is better. (Tr. 212). Plaintiff stated that he feels more symptoms over to the left, particularly if he stands or sits in one position. (Tr. 21 2). The physical examination revealed that Plaintiff has paravertebral tenderness in the facet joints bilaterally, worse on the left, some pain with extension to the left.  (Tr. 212). On July 25, 2001, Plaintiff had a flare up of pain on the right side of his back. (Tr. 211).  The physical examination revealed Plaintiff had some recurrent tenderness and spasm in the right side of his lower lumbar region. (Tr. 211). On September 5, 2001, Plaintiff reported having a fair amount of stump pain, a burning sensation at the end of the stump, which was unusual for him. (Tr. 209). Dr. Hussey also noted that Plaintiff continued with the mechanical lumbar pain. (Tr. 209). Plaintiff stated that if he sits too long, stands too long, more than  20 minutes, he is aggravated. (Tr. 209). The physical examination revealed that Plaintiff was wearing his prosthesis. (Tr. 209).  In addition, pain with

extension of the back was also noted. (Tr. 209).

On September 5, 2001, Plaintiff's treating physician, Dr. Hussey, completed a physical capacity evaluation (PCE). (Tr. 207-208). In the PCE, Dr. Hussey stated that Plaintiff can stand/walk for less than an hour in an eight (8) hour work day, and can sit for less than an hour in an eight (8) hour work day. (Tr. 207). Dr. Hussey also stated that Plaintiff can occasionally and frequently lift/carry a maximum of 10 pounds. (Tr. 207). Dr. Hussey stated that Plaintiff cannot use his feet for repetitive movements as in operating foot controls. (Tr. 208). Dr. Hussey also stated that Plaintiff could never bend, kneel, squat, crawl, climb stairs, and climb ladders. (Tr. 208). On October 3, 2001, Plaintiff complained of lumbar pain with mild intermittent radicular features. Dr. Hussey noted that the Plaintiff has been a little depressed (Tr. 206). Dr. Hussey also noted that at times Plaintiff has had crying episodes. (Tr. 206). On November 14, 2001, Plaintiff complained of a lot of back pain and if he overdoes that the pain would go into the center of the back and in the buttocks mainly a little bit off to the right. (Tr. 205). On February 13, 2002, Plaintiff complained of pain that fluctuates from side to side and the pain was returning to the right side. (Tr. 204). Plaintiff stated that his whole leg would ache and feels burning in his stump, at times stabbing pain. (Tr. 204). The physical examination revealed that Plaintiff has non-localizing paravertebral tenderness in the lumbar region. (Tr. 204). On May 13, 2002, Dr. Hussey stated that Plaintiff was getting more left-sided back pain and was still having a shooting, stabbing pain into the legs. (Tr. 310). The physical examination revealed that Plaintiff still has prosthesis in the right lower extremity. (Tr. 310). Plaintiff has a paravertebral tenderness that appeared worse to the left. (Tr. 310). On June 24, 2002, Dr. Hussey stated that Plaintiff was still struggling to get through the day. (Tr. 309).

8

Plaintiff wants to try to get some type of employment but he says that by the end of the day he was miserable with aching, throbbing pain in his back. (Tr. 309). Dr. Hussey noted that Plaintiff occasionally gets burning numbness in his legs.  (Tr. 309). On October 22, 2002, Plaintiff complained of worsening of pain.  (Tr. 307). He went out on a friend's big boat.  (Tr. 307). Plaintiff stated that he was having a lot of neck pain going center, across the shoulder, up into the neck, giving him throbbing headaches associated with photophobia. (Tr. 307). Dr. Hussey stated that pain seemed to be bilateral and symmetric. (Tr. 307). The physical examination revealed that Plaintiff has exquisite tenderness in the cervical vertebral body spinous process column.  (Tr. 307). Plaintiff had paravertebral myofascial triggers. (Tr. 307). Dr. Hussey noted that Plaintiff has pain with extension movements. (Tr. 307). On December 18, 2002, Plaintiff stated that he had continued to have problems with the headaches twice a week at least. (Tr. 306). Plaintiff stated that he gets vibratory pain in the neck and pain in his back and legs. (Tr. 306). Dr. Hussey stated that Plaintiff was still getting monoclonic jerks at night and has been having a hard time sleeping because of the jerks. (Tr. 306). The physical examination revealed that Plaintiff had non-localizing tenderness in the lumbar region. (Tr. 306). Plaintiff had myofascial triggers in the left trapezius. (Tr. 306).

On January 29, 2003, Dr. Hussey stated that Plaintiff's chief complaint was back pain. (Tr. 305).  He also complained of feeling depressed and sleeping problems. (Tr. 305). Dr. Hussey stated that occasionally Plaintiff would get some shooting pain in the right buttock and some pain up his left back but that he is not having true radicular symptoms. (Tr. 305). On February 26, 2003, Plaintiff stated that he had problems breathing since switching to methadone. (Tr. 304). The Plaintiff was back to trying to do work, which is good, for 30 hours a week.  (Tr. 304).

9

Plaintiff stated his pain has gotten worse on the right side. (Tr. 304). The physical examination revealed that Plaintiff has tenderness over the lower facetal column, particularly on the right. (Tr. 304).

On  February 26, 2003, Plaintiff had a chest x-ray.  (Tr. 297). Impressions were mild degree of underlying airtrapping and vague 5-cm nodule, non-calcified, left mid lung field.  (Tr. 297). On March 24, 2003, Plaintiff had a CT Scan of the chest (Tr. 296). The indications were abnormal chest x-ray and difficulty breathing.  (Tr. 296).  Impressions were  partial calcification of the subpleural nodule and calcified mediastinal lymph nodes. (Tr. 296).

On April 23, 2003, Dr. Hussey stated that Plaintiff continued with lower back pain, although he is working. (Tr. 303). Dr. Hussey stated that the pain was mainly mechanical pain in the lower back, when Plaintiff does a lot of bending and lifting at work. (Tr. 303). The physical examination reveals that Plaintiff has some paravertebral tenderness in the lower facetal columns bilaterally. (Tr. 303).

On May 5, 2003, Dr. Hussey completed a physical capacity evaluation (PCE) and pain interrogatory (PI) form. (Tr. 293-295).  In the PCE, Dr. Hussey stated that Plaintiff must change position every 20 minutes. (Tr. 293).  Dr. Hussey has also noted that Plaintiff can occasionally lift/carry a maximum of less than 10 pounds. (Tr. 293). Dr. Hussey also stated that Plaintiff cannot use his feet for repetitive movements as in operating foot controls. (Tr. 293). Dr. Hussey stated that Plaintiff could never bend, kneel, squat, crawl, climb stairs, and climb ladders.  (Tr. 294). In the PI, Dr. Hussey stated that he was treating the Plaintiff for herniated lumbar disc, lumbar stenosis, and lumbar radiculitis. (Tr. 295). Dr. Hussey stated that Plaintiff's complaint of chronic pain symptoms were consistent with diagnosis. (Tr. 295).

On August 21, 2003, Dr. Hussey noted that Plaintiff had myoclonic jerking at night. (Tr. 308). It was noted that Plaintiff had a lot of breakthrough pain. (Tr. 308). Dr. Hussey stated that Plaintiff was still having pain across the back and into his sacrum. (Tr. 308).

From May 5, 2001 through November 30, 2001, Plaintiff was treated by Dr. Susan M.. Liberski, a gastroenterologist, and hepatologist.  (Tr. 245-270). In a letter dated May 30, 2001, Dr. Liberski noted that Plaintiff has a long history of colitis and has been having problems with abdominal pain, diarrhea, heartburn, and nausea.. (Tr. 256).  Dr. Liberski has noted that Plaintiff was on Buspar and Serzone for anxiety and depression. (Tr. 256). Dr. Liberski has also stated that Plaintiff has had chronic problems with back pain. (Tr. 256). Dr. Liberski  noted that Plaintiff had lost his right leg in a motor vehicle accident in 1970's and had multiple surgeries as well.  (Tr. 256). Impression was that Plaintiff has had multiple problems including abdominal pain, colitis with increasing diarrhea, abdominal rectal pain, nausea and vomiting, as well as a history of probably acid reflux. (Tr. 257). On May 30, 2001, Plaintiff was assessed with gastroesophageal reflux disease (GERD), colitis with increased diarrhea, abdominal pain, nausea and vomiting. (Tr. 252). In a letter dated November 30, 2001, Dr. Liberski stated that Plaintiff was initially seen in May with complaints of chronic diarrhea for the last six months. (Tr.245). Dr. Liberski stated that Plaintiff has a questionable history of ulcerative colitis in the 1970's. (Tr. 245).  Dr. Liberski noted that Plaintiff was having some episodes of rectal bleeding and was also having a lot of acid reflux (Tr. 245). Plaintiff underwent a colonoscopy on June 14, 2001. The indications were abdominal distress of pain, diarrhea, and follow-up of ulcerative colitis. (Tr. 250).

At the hearing, Plaintiff testified that he quit work in December of 2000 because his back

was severely hurting and that his legs, his knees would not straighten up and he could not move. (Tr. 321). Plaintiff testified that he lost his right leg below the knee in a motor vehicle accident in 1977. (Tr. 321). Plaintiff also testified that he has prosthetic leg since 1978.  (Tr. 321). The Plaintiff is currently taking medication (morphine for back pain).  He indicated at the hearing that the medication eases the pain, but never has taken it all the way away.  (Tr. 322). At the time of the hearing, the Plaintiff was working five (5) days a week, a minimum of six (6) hours per day. (Tr. 323).  Plaintiff testified that he can sit for 10-15 minutes without experiencing pain. (Tr. 326). Plaintiff testified that he usually squirms around a little bit and has to keep moving around mainly, or stay there and change positions. (Tr. 326). Plaintiff testified that he can stand for 10 to 15 minutes before he has to lean against something or sit down. (Tr. 326). Plaintiff testified that he can walk for 15 minutes and after that, he would experience severe pain in his back, mainly the spasms. (Tr. 327).  Out of a six (6) hour work day, he testified that he probably sits four (4) hours and walks four (4) hours.  (Tr. 328-329).   He started working on February 3, 2003.  (Tr. 330). The Plaintiff is making $24.00 per hour. (Tr. 333).  Plaintiff testified that he can lift a maximum of five pounds. (Tr. 335). Plaintiff also testified that he has problems with memory and concentration that are affected by pain.  (Tr. 335-336).

## *Administrative Law Judge's Findings*

Upon consideration of the entire record, the ALJ found that the Plaintiff had not engaged in substantial gainful activity since the alleged onset of disability.  (Tr. 25).   He found that the medical evidence established that the Plaintiff had an impairment that was considered "severe" within the Regulations.  (Tr. 25).  However, the medically determinable impairments did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No.

4.  (Tr. 25).  The ALJ found that the Plaintiff's allegations regarding his limitations were not totally credible.  (Tr. 26).  After carefully considering all of the medical opinions in the record regarding the severity of the Plaintiff's impairments, the ALJ found that the Plaintiff retained the residual functional capacity to lift and carry 20 pounds occasionally and ten pounds frequently.  (Tr. 26).  He found that the Plaintiff's past relevant work as a pre-cast showroom manager did not require the performance of work-related activities precluded by his residual functional capacity and that the Plaintiff's medically determinable below the knee amputation of right lower extremity does not prevent him from performing his past relevant work.  (Tr. 26).   Thus, the Plaintiff was found to be not disabled under the Social Security Act.  Even in considering the residual functional capacity for light work and the vocational experts testimony, a finding of "not disabled" was reached within the framework of medical-vocational Rule 202.17.  (Tr. 26).

## THE STANDARD OF REVIEW

### A.  Affirmance

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards,  McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, Richardson v. Perales, 402 U.S. 389, 390, 91 S. Ct. 1420, 28 L. Ed 2d 842 (1971).  In evaluating whether a claimant is disabled, the ALJ must follow the sequential inquiry described in the regulations[2].  See 20 C.F.R. §§

---

[2]The inquiry requires the ALJ to engage in a five-step analysis, which will either preclude or mandate a finding of disability.  The steps are as follows:
    *Step 1.*  Is the claimant engaged in substantial gainful activity?  If the claimant is engaged in such activity, then he or she is not disabled.  If not, then the ALJ must move on to the next question.
    *Step 2.*  Does the claimant suffer from a severe impairment?  If not, then the claimant is not disabled.  If there is a severe impairment, the ALJ moves on to step three.
    *Step 3.*  Does the claimant's impairment meet or equal one of the listed

404.1520(a), 404.920(a).  The Commissioner's findings of fact are conclusive if supported by

substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla-*i.e.*, the

evidence must do more than merely create a suspicion of the existence of a fact, and must include

such relevant evidence as a reasonable person would accept as adequate to support the

conclusion.  Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker,

672 F.2d 835, 838 (11th Cir. 1982)); Richardson, 402 U.S. at 401.

Where the Commissioner's decision is supported by substantial evidence, the District

Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and

even if the reviewer finds that the evidence preponderates against the Commissioner's decision.

Edwards v. Sullivan, 937 F.2d 580, 585 n.3 (11th Cir. 1991); Barnes v. Sullivan, 932 F.3d 1356,

1458 (11th Cir. 1991).  The District Court must view the evidence as a whole, taking into

account evidence favorable as well as unfavorable to the decision.  Foote, 67 F.3d at 1560;

Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir 1992) (holding the court must scrutinize the

entire record to determine reasonableness of factual findings).

The court  "may not decide the facts anew, reweigh the evidence or substitute it's

judgment for that of the [Commissioner]."Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th

Cir. 1983).  If the Commissioner's decision is supported by substantial evidence, it should not be

---

impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1.  If so, then
the claimant is disabled.  If not, the next question must be resolved.
     *Step 4*.  Can the claimant perform his or her former work?  If the claimant
can perform his or her past relevant work, he or she is not disabled.  If not,
the ALJ must answer the last question.
     *Step 5*.  Can he or she engage in other work of the sort found in the
national economy?  If so, then the claimant is not disabled.  If the claimant
cannot engage in other work, then he or she is disabled.  See 20 C.F.R.
§§404.1520(a)-(f), 416.920(a)-(f); see also Phillips v. Barnhart, 357 F.3d 1232,
1237-40 (11th Cir. 2004); Foote v. Chater, 67 F.3d 1553, 1557 (11th Cir. 1995)
(per curiam).

disturbed. <u>Lewis v. Callahan</u>, 125 F. 3d 1436, 1440 (11th Cir. 1997).

**B.  <u>Reversal and Remand</u>**

Congress has empowered the district court to reverse the decision of the Commissioner without remanding the cause. 42 U.S.C. § 405 (g)(Sentence Four). The district court will reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. <u>Keeton v. Department of Health and Human Services</u>, 21 F.3d 1064, 1066 (11th Cir. 1994); <u>Cornelius v. Sullivan</u>, 936 F.2d 1143, 1145 (11th Cir. 1991); <u>Martin v. Sullivan</u>, 894 F.2d 1520, 1529 (11th Cir. 1990). This Court may reverse the decision of the Commissioner, and order an award of disability benefits, where the Commissioner has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt. <u>Davis v. Shalala</u>, 985 F.2d 528, 534 (11th Cir. 1993).  The district court may also remand a case to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405 (g); under sentence six of 42 U.S.C. § 405 (g); or under both sentences. <u>Jackson v. Chater</u>, 99 F.3d 1086, 1089 - 92, 1095, 1098 (11th Cir. 1996).

To remand under sentence four, the district court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim. <u>Jackson</u>, 99 F.3d at 1090 - 91 (remand appropriate where ALJ failed to develop a full and fair record of claimant's residual functional capacity); <u>Davis</u>, 985 F.2d at 534 (remand to the Secretary is warranted where the ALJ has failed to apply the correct legal standards).  Where the district court cannot discern the basis for the

Commissioner's decision, a sentence-four remand may be appropriate to allow the Commissioner to explain the basis for his decision. Falcon v. Heckler, 732 F.2d 827, 830 (11th Cir. 1984). (remand was appropriate to allow ALJ to explain the his basis of his decision).

On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence upon a showing that there is new evidence which is material and that there was good cause for the failure to incorporate such evidence into the record during a prior proceeding. Diorio v. Heckler, 721 F.2d 726, 729 (11th Cir. 1983)(finding ALJ error and remanding to consider psychiatric evaluation); Reeves v. Heckler, 734 F.2d 519, 522 n.1 (11th Cir. 1984) (remanding on the grounds that it is reversible error for the ALJ not to order a consultative examination when warranted). After a sentence-four remand, the district court enters a final and appealable judgment immediately, and then loses jurisdiction. Jackson, 99 F.3d at1095.

In contrast, a sentence-six remand may be warranted even in the absence of an error by the Commissioner if new, material evidence becomes available to the claimant. Jackson, 99 F.3d at 1095. Sentence six of § 405 (g) provides:

> The court . . . may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding.

42 U.S.C. § 405 (g) (sentence six). To remand under sentence six, the claimant must establish: 1.) that there is new, non-cumulative evidence; 2.) that the evidence is material — relevant and probative so that there is a reasonable possibility that it would change the administrative result; and 3.) there is good cause for failure to submit the evidence at the administrative level.  Jackson,

99 F.3d at 1090 - 92; <u>Keeton v. Dept. of Health and Human Serv.</u>, 21 F.3d 1064, 1068 (11th Cir. 1994).  With a sentence-six remand, the parties must return to the district court after remand to file modified findings of fact. <u>Jackson</u>, 99 F.3d at 1095. The district court retains jurisdiction pending remand, and does not enter a final judgment until after the completion of remand proceedings.[3] <u>Id</u>.

### C.  <u>Standard of Review for Evidence Evaluated by the Appeals Council</u>

Congress left the term "final decision" undefined in 42 U.S.C. § 405 (g). Where a claimant exhausts his administrative remedies by requesting review by the Appeals Council and the Appeals Council then denies review, the Appeals Council's order denying review is a "final decision" of the Commissioner under § 405 (g). <u>Sims v. Apfel</u>, 530 U.S. 103, 106-107, 120 S.Ct. 2080, 147 L. Ed. 2d 80 (2000); <u>Bloodsworth,</u> 703 F.2d at 1239.  The Appeals Council "will" review a case if there appears to be an abuse of discretion by the ALJ, if there is an error of law, or if the ALJ's action, findings, or conclusions are not supported by substantial evidence. 20 C.F.R. § 416.1470; <u>Sims</u>, 530 U.S. at 111; <u>Parker v. Bowen</u>, 788 F.2d 1512, 1518 (11th Cir. 1986) (en banc). The Appeals Council's denial of review is subject to judicial review to determine if it is supported by substantial evidence. <u>Sims</u>, 530 U.S. at 111.

Just as the ALJ has a duty to investigate the facts and to develop the arguments both for and against the granting of benefits, the Appeals Council's review is similarly broad. <u>Id.</u> at 111-

---

[3] 1The time for filing an application for attorneys fees under the Equal Access to Justice Act, 28 U.S.C. § 2412 ["EAJA"] differs in remands under sentence four and sentence six. <u>Jackson</u>, 99 F.3d at 1089, 1095 n.4 and surrounding text. In a sentence-four remand, the EAJA application must be filed after the entry of judgment before the district court loses jurisdiction. <b>Id.</b> In a sentence-six remand, the time runs from the post-remand entry-of-judgment date in the district court. <u>Id</u>.

112.  When the Appeals Council refuses to consider new evidence submitted to it and denies

review, the Appeals Council's decision denying review is subject to judicial review. 20 C.F.R. §

§ 404.970 (b); 416.1470 (b); Keeton, 21 F.3d at 1066.  Furthermore, the Appeals Council

commits reversible error when it refuses to consider new evidence if that evidence was available

at the time of or prior to the ALJ's hearing and then denies review. Id. at 1066.  Similarly, it is

reversible error for a district court to consider only the evidence presented to the ALJ — and to

ignore the new evidence presented to the Appeals Council — in reviewing a decision of the

Appeals Council. Id.  The Appeals Council must consider and evaluate new evidence to

determine whether there is a basis for changing the ALJ's decision. Falge v. Apfel, 150 F.3d

1320, 1322 n. 4 (11th Cir. 1998). When the Appeals Council has denied review, the district court

looks only to the evidence actually presented to the ALJ in determining whether the ALJ's

decision is supported by substantial evidence. Id. at 1323; Eads v. Secretary of Health and

Human Services, 983 F.2d 815, 817 (7th Cir. 1993) (ALJ cannot be faulted for failure to weigh

evidence never presented to him). The Eleventh Circuit directs the district courts to consider

evidence submitted to the Appeals Council in reviewing the Appeals Council's denial of review.

Falge, 150 F.3d at 1324; Keeton, 21 F.3d at 1066.  Indeed, it makes sense that Congress has

provided for judicial review of the Commissioner's final decision — the last step of review

necessary to exhaust administrative remedies. When the Appeals Council refuses to consider new

evidence submitted to it, the Appeals Council's decision denying review is subject to judicial

review for error. Id.   Similarly, when the Appeals Council denies review of an ALJ's decision

after receiving, considering, and evaluating new and material evidence that clearly and

thoroughly undermines the ALJ's findings of fact and conclusions of law, the Appeals Council's

18

decision denying review also must be subject to judicial review for error. 20 C.F.R. § 404.970 (b)

(Appeals Council shall evaluate the entire record including the new and material evidence

submitted if it relates to the relevant period, and it will then review the case if it finds that the

ALJ's action, findings, or conclusion is contrary to the weight of the evidence currently of

record); Falge,150 F.3d at 1324; Keeton, 21 F.3d at 1066, 1068.  The Commissioner cannot

avoid judicial review of the Appeals Council's decision to deny review by considering but not

acting on new evidence that is highly probative of disability, or by considering but not acting on

evidence that shows in retrospect that an ALJ's action, findings, or conclusion are contrary to the

weight of the evidence currently of record.

## THE LAW

The law defines disability as the inability to do any substantial gainful activity by reason

of any medically determinable physical or mental impairment which can be expected to result in

death or which has lasted or can be expected to last for a continuous period of not less than

twelve months. 42 U.S.C. §§ 416 (I), 423 (d)(1); 20 C.F.R. § 404.1505. The impairment must be

severe, making the claimant unable to do his or her previous work, or any other substantial

gainful activity which exists in the national economy. 42 U.S.C. § 423 (d)(2); 20 C.F.R.

§§404.1505 - 404.1511.

### A. Treating Physicians

Substantial weight must be given to the opinion, diagnosis and medical evidence of a

treating physician unless there is good cause to do otherwise. 20 C.F.R. § 404.1527 (d); Lewis,

125 F.3d at 1439 - 1441; Sabo v. Commissioner of Social Security, 955 F.Supp. 1456, 1462

(M.D. Fla. 1996).  If a treating physician's opinion on the nature and severity of a claimant's

impairments is well-supported by medically acceptable clinical and laboratory diagnostic

techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must

give it controlling weight. 20 C.F.R. § 404.1527 (d)(2). The ALJ may discount a treating

physician's opinion or report regarding an inability to work if it is unsupported by objective

medical evidence, supports a contrary finding, or is wholly conclusory. Edwards v. Sullivan, 937

F.2d 580,   (11th Cir. 1991) (ALJ properly discounted treating Physician's report where the

physician was unsure of the accuracy of his findings and statements); Morrison v. Barnhart, 278

F. Supp. 1331, 1334 (M.D. Fla. 2003).  Where a treating physician has merely made conclusory

statements, the ALJ may afford them such weight as is supported by clinical or laboratory

findings and other consistent evidence of a claimant's impairments. Schnor v. Bowen, 816 F.2d

578, 582 (11th Cir. 1987); Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986).  When a

treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless

weigh the medical opinion based on the (1) length of the treatment relationship and the frequency

of examination; (2) the nature and extent of the treatment relationship; (3) the medical evidence

supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the

medical issues at issue; (6) other factors which tend to support or contradict the opinion. 20

C.F.R. § 404.1527 (d).  However, a treating physician's opinion is generally entitled to more

weight than a consulting physician's opinion. 20 C.F.R. § 404.1527 (d)(2); Wilson v. Heckler,

734 F.2d 513, 518 (11th Cir.1984). Furthermore, should the ALJ discount the treating

physician's opinion he must clearly articulate the reasons for giving less weight to the opinion,

and failure to do so is reversible error. Morrison, 278 F. Supp. at1334.

   The ALJ is required to review all of the medical findings and other evidence that supports

a medical source's statement that a claimant is disabled.  However, the ALJ is responsible for

making the ultimate determination about whether a claimant meets the statutory definition of

disability. 20 C.F.R. § 404.1527 (e). The ALJ is not required to give any special significance to

the status of a physician as treating or non-treating in weighing an opinion on whether the

claimant meets a listed impairment, a claimant's residual functional capacity (20 C.F.R. §§

404.1545 and 404.1546), or the application of vocational factors because that ultimate

determination is the providence of the Commissioner. 20 C.F.R. § 404.1527 (e).

### B. Developing the Record

The ALJ has a duty to fully and fairly develop the record. Welch v. Bowen, 854 F.2d 436,

438 (11th Cir. 1988); Cowart v. Schweiker, 662 F.2d 731, 735 - 36 (11th Cir. 1981). The

Commissioner also has a duty to notify a claimant of the statutory right to retained counsel at the

social security hearing, and to solicit a knowing and voluntary waiver of that right. 42

U.S.C.§ 406; Cowart, 662 F.2d at 734. The obligation to fully and fairly develop the record exists

if a claimant has waived the right to retained counsel, and even if the claimant is represented by

counsel. Id. at 735-736.  Where an unrepresented claimant has not waived the right to retained

counsel, the ALJ's obligation to develop a full and fair record rises to a special duty. Brown v.

Shalala, 44 F.3d 931, 934 - 35 (11th Cir. 1995)(citing Smith v. Schweiker, 677 F.2d 826, 829

(11th Cir. 1982)). This special duty requires the ALJ to "scrupulously and conscientiously probe

into, inquire of, and explore for all the relevant facts" and to be "especially diligent in ensuring

that favorable as well as unfavorable facts and circumstances are elicited." Cowart, 662 F.2d at

735 (citations omitted).

However, while it is well established that the ALJ has a duty to develop a full and fair

record, that duty only extends to the record for the twelve (12) months preceding the filing of an application for benefits. Ellison v. Barnhart, 355 F.3d 1272, 1276 (11th Cir. 2003).  Furthermore, the ALJ's duty to develop the record does not relieve the Plaintiff of his burden of proving that he is disabled, and consequently, the Plaintiff is still responsible for producing evidence in support of his claim. Id. (citing 20 C.F.R. § 416.912(c)).

### C. Medical Tests and Examinations

The ALJ is required to order additional medical tests and examinations only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled. 20 C.F.R. § 416.917; Conley v. Bowmen, 781 F.2d 143, 146 (8th Cir. 1986). In fulfilling his duty to conduct a full and fair inquiry, the ALJ is not required to order a consultative examination unless the record establishes that such an examination is necessary to enable the ALJ to render an informed decision. Holladay v. Bowen, 848 F.2d 1206, 1209 (11th Cir. 1988); Reeves v. Heckler, 734 F.2d 519, 522 n. 1 (11th Cir. 1984) (failure to order such an evaluation may be reversible error). Under the regulations, however, the ALJ may determine that a consultative examination or other medical tests are necessary. 20 C.F.R. §416.917 (1998).

### D. Other Work

Once the ALJ finds that a claimant cannot return to his or her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy. Foote v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995). In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant. Id. at 1558; Allen v.Sullivan, 880

F.2d 1200, 1201 (11th Cir. 1989). This burden may sometimes be met through exclusive reliance on the Medical-Vocational Guidelines [the "grids"]. Foote, 67 F.3d at 1558.

Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors. 20 C.F.R. Part 404, Subpart P,Appendix 2, § 200.00 (e); Foote, 67 F.3d at 1559 (citing Heckler v. Campbell, 461 U.S. 458, 103 S.Ct. 1952, 76 L. Ed. 2d 66 (1983) (holding that exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements). Exclusive reliance is not appropriate "either when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills." Walker v. Bowen, 826 F.2d 996, 1002-03 (11th Cir. 1987). In almost all of such cases, the Commissioner's burden can be met only through the use of a vocational expert. Foote, 67 F.3d at 1559; MacGregor v. Bowen, 786 F.2d 1050, 1054 (11th Cir. 1986) (when nonexertional limitations are alleged, the preferred method of demonstrating that the claimant can perform specific work is through the testimony of a vocational expert). It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy. Allen v. Sullivan, 880 F.2d 1200, 1202 (11th Cir. 1989).  In any event, the ALJ must make a specific finding as to whether the non-exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations. Foote, 67 F.3d at 1559.

23

**E. Pain**

Pain is a non-exertional impairment. Id. at 1559. Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment which could reasonably be expected to produce the pain or symptoms alleged. 42 U.S.C. § 423 (d)(5)(A). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the Eleventh Circuit's three-part "pain standard." Foote, 67 F.3d at 1560.

The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain. Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991).  Pain alone can be disabling, even when its existence is unsupported by objective evidence, Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992), although an individual's statement as to pain is not, by itself, conclusive of disability. 42 U.S.C. § 423 (d)(5)(A).

**F. Credibility**

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the

24

credibility finding. <u>Foote</u>, 67 F.3d at 1561-62; <u>Jones v. Department of Health and Human</u>

<u>Services</u>, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial

evidence). A reviewing court will not disturb a clearly articulated credibility finding with

substantial supporting evidence in the record. <u>Hale v. Bowman</u>, 831 F.2d 1007, 1012 (11th

Cir. 1987); <u>MacGregor v. Bowen</u>, 786 F.2d 1050, 1054 (11th Cir. 1986). As a matter of law, the

failure to articulate the reasons for discrediting subjective pain testimony requires that the

testimony be accepted as true. <u>Foote</u>, 67 F.3d at 1561-62; <u>Cannon v. Bowen</u>, 858 F.2d 1541,

1545 (11th Cir. 1988).

A lack of a sufficiently explicit credibility finding becomes a ground for remand when

credibility is critical to the outcome of the case. <u>Smallwood v. Schweiker</u>, 681 F.2d 1349,

1352 (11th Cir. 1982). If proof of disability is based on subjective evidence and a credibility

determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such

testimony or the implication must be so clear as to amount to a specific credibility finding."

<u>Foote v. Chater</u>, 67 F.3d at 1562 (quoting <u>Tieniber v. Heckler</u>, 720 F.2d 1251, 1255 (11th

Cir.1983) (although no explicit finding as to credibility is required, the implication must be

obvious to the reviewing court).

## ANALYSIS

The Plaintiff contends that the ALJ erred by failing to give greater weight to the

Plaintiff's statements about the severity of his pain.  The Plaintiff further contends that the ALJ

erred by improperly discrediting the Plaintiff due to his daily activities.

*(1) Whether the ALJ Erred By Failing to Give Greater Weight to the Plaintiff's Pain Complaints*

The Eleventh Circuit's pain standard requires (1) evidence of an underlying medical

condition and either (2) objective medical evidence that confirms the severity of the alleged pain

arising from that condition or (3) that the objectively determined medical condition is of such a

severity that it can be reasonably expected to give rise to the alleged pain.  Foote, 67 F.3d at 1560

(quoting Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991)).  Regarding the Plaintiff's claim

of pain, the ALJ articulated numerous reasons to support his decision that Johnson's pain

complaints should be discounted.  Specifically, the ALJ found that there were no objective

findings to support the Plaintiff's alleged back pain.  (Tr. 23).  In evaluating those complaints, the

ALJ found that:

> From a physical perspective, the evidence suggest that except for some early
> degenerative disc disease at C-5 and C-6, and paravertebral tenderness of the lumbar
> spine, the claimant's physical capabilities would not be hindered to the degree
> alleged at the hearing.  An MRI of the lumbar spine dated October 2000, showed no
> evidence of focal disc herniation.  (Tr. 186).  An x-ray of the thoracic spine dated
> November 2000, showed no evidence of acute osseous abnormality or destructive
> process. (Tr. 183).  On May 22, 2001, Dr. Hussey reported that claimant had chronic
> lumbar pain for nine months. (Tr. 299).  Physical examination by Dr. Hussey, the
> claimant's treating physician, on November 14, 2001, revealed full range of motion
> of the cervical spine.  Negative Spurling sign, and sensory, and motor exams of the
> extremities were normal. (Tr. 205).  Other than some lumbar tenderness, "everything
> else is stable." (Tr. 205).  In June 2002, straight leg raise was negative.  (Tr. 309).
> On February 26, 2003, claimant was able to ambulate without difficulty. (Tr. 304).

Where there are no objective findings to support the alleged pain, and the ALJ clearly

articulates his rationale for not crediting the alleged pain, as the ALJ did in this case, the Court

will not disturb the ALJ's decision. Hale, 831 F.2d at 1012.

### (2) Whether the ALJ Improperly Discredited the Plaintiff's Daily Activities

The Plaintiff further argues that the ALJ erred by improperly discrediting the Plaintiff

due to his daily activities.   The ALJ's decision to discount the Plaintiff does not rest solely on a

conclusion regarding  his reported daily activities.  The ALJ properly considered Plaintiff's

activities as part of the relevant evidence in accordance with the regulations, rulings, and the Eleventh Circuit case law. The ALJ stated:

> "Mr. Johnson's statements concerning his impairments and their impact on his ability to work are not entirely credible in light of the claimant's own description of his activities and lifestyle, the degree of medical treatment required, the reports of the treating and examining practitioners, and the findings made on examination."

Specifically, the ALJ cited the Plaintiff is "very active." (Tr. 23, 149).

The ALJ further mentioned that the record reflects work activity after the alleged onset date. "The claimant has been working since February 2003 as a supervisor in a shop, working 30 hours a week, sitting four (4) hours and standing/walking two (2) hours per day." (Tr. 24). He is also earning $24.00 per hour which constitutes substantial gainful activity. (Tr. 24). The Plaintiff's ability to work, the medical evidence in the record, along with his daily activities provided substantial evidence for the ALJ to find that the Plaintiff was not disabled within the meaning of the Social Security Act.

Therefore, it is RESPECTFULLY RECOMMENDED that the decision of the Administrative Law Judge be affirmed.

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

**DONE AND ORDERED** at Fort Myers, Florida, this  12th  day of , May 2005.


_Sheri Polster Chappell_
SHERI POLSTER CHAPPELL
UNITED STATES MAGISTRATE JUDGE

Copies:  Counsel of Record